IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC LLC F/K/A<br>GEORGIA-PACIFIC, CORP., | | PLAINTIFF, |
| VS. | | CIVIL ACTION NO. 4:07CV159-P-S |
| HORNADY TRUCK LINE, INC. and<br>LIBERTY MUTUAL FIRE INSURANCE COMPANY, | | DEFENDANTS. |

## MEMORANDUM OPINION

These matters come before the court upon Georgia Pacific's motion for summary judgment against Hornady Truck Line [10]; Hornady's cross-motion for summary judgment against Georgia Pacific [39]; Georgia Pacific's motion for summary judgment against Liberty Mutual [28]; and Liberty Mutual's cross-motion for summary judgment against Georgia Pacific [35]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

Georgia Pacific LLC ("GP") entered into a Contract Carriage Agreement ("Agreement") with Hornady Trucking Line, Inc. ("Hornady") effective April 1, 2003 wherein Hornady agreed to transport GP's trees. On February 9, 2004 James Wollerson, a driver for Hornady, was injured after falling off the back of his truck while unloading at a GP facility in Oxford, Mississippi. Wollerson filed an action against GP, alleging GP was solely liable for his injuries. On March 5, 2008 GP settled the *Wollerson* action for $35,000. The attorneys' fees and costs paid by GP in defending the suit totaled $103,155.36.

On September 28, 2008 GP filed the instant case originally against Hornady, seeking damages for and a judgment declaring that Hornady breached the Agreement between them by

1

failing to defend GP in the *Wollerson* action and for failing to procure insurance covering GP for Wollerson's claim. On March 31, 2008 GP filed a Second Amended Complaint wherein they added Liberty Mutual Fire Insurance Company ("Liberty Mutual") as a defendant, asserting that Liberty Mutual was liable for (1) breach of contract for failure to defend and indemnify GP in the *Wollerson* action; (2) negligence for failure to add GP as an additional insured on Hornady's automobile liability policy; and (3) breach of contract by failing to indemnify GP as a third-party beneficiary.

All parties have filed cross-motions for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue

must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. GP's Claims against Hornady**

1. Choice of Law Regarding the Agreement

In their Agreement, GP and Hornady agreed that Georgia law would apply in interpreting the Agreement. Paragraph 21 states: "[t]his Agreement shall be interpreted in accordance with the laws of the state of Georgia, without giving effect to the conflict of law rules thereof." ¶ 21 of the Contract Carriage Agreement. Accordingly, the court will consult Georgia law in its interpretation of the Agreement.

> In *Hibbard v. P.G.A., Inc.*, the Georgia Court of Appeals observed:
>
> [T]he construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract. The court follows a three-step procedure in construing contract language: The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity.

553 S.E.2d 371, 372 (Ga. App. 2001). The rules of interpreting a contract were codified in Ga. Code Ann. § 13-2-2. Subsection (2) provides that words in a contract "generally bear their usual and common signification." Subsection (4) provides: "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." Subsection (5) provides: "If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred."

## 2. Breach of Contract - Failure to Defend

GP argues that pursuant to the Agreement between them, Hornady agreed "to assume all risks growing out of or occurring in the performance of this Agreement by [Hornady] its agents or employees," Agreement at ¶ 7, which included the duty to defend, found in ¶ 7(c).

Hornady argues that the Agreement requires them to defend and indemnify GP in circumstances in which GP is held vicariously liable for Hornady's actions or inactions, but expressly excepts circumstances in which GP is sued for their sole negligence, as is the case in the *Wollerson* action. That is, though Wollerson was truck driver for Hornady and was injured while in performance of the Agreement to ship trees to GP's facility in Oxford, Hornady argues that the duty to defend was not triggered because Wollerson alleged that GP was the sole cause of his injuries. Hornady relies on subsections (b) and (c) of ¶ 7 this proposition.

Section 7 of the Agreement provides in pertinent part:

[Hornady] agrees to assume all risks growing out of or occurring in the performance of this Agreement by [Hornady] its agents or employees for:

\*\*\*

(b) any death or injury to any person or persons, whether or not employed by [Hornady], however caused, occurring during the performance of this Agreement or upon the premises where this Agreement is being performed, **except when caused by the negligence of G-P,** its agents and employees.

(c) [Hornady] further covenants and agrees, and it hereby binds itself, as its own sole cost and expense, **to defend**, save harmless and indemnify [Georgia-Pacific] from and against any and all manner of suits, claims, judgment, demands, costs, attorneys fees, charges, debits, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or to the death of persons or loss of or damage to property in any manner whatsoever, **arising out of or predicated upon the operation of trucks of or by [Hornady]**, its agents or employees, or the conduct of

5

> the business of [Hornady], or the transportation and handling of goods by [Hornady], its agents or employees whether pursuant to this Agreement or otherwise, **provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P.**

(emphasis added).

GP argues that the language in ¶ 7(c) does not except defense from circumstances in which GP is alleged to be solely liable for negligence. More specifically, GP argues that since the term "to defend" is used in the second line of ¶ 7(c) but is not expressly repeated in the exception "provided that this hold harmless and indemnity shall not apply to the extent that this action giving rise to the claim was caused by an act or omission of G-P," defense is not excluded.

Applying Georgia's contract construction test, the court concludes that the language in subsections (b) and (c) in ¶ 7 of the Agreement are not ambiguous with regard to whether Hornady must provide a defense to GP in the event an "action giving rise to the claim was caused by an act or omission of G-P." Applying Ga. Code Ann. § 13-2-2(2)'s rule that words in a contract "generally bear their usual and common signification," the court concludes that the plain meaning of the term "hold harmless" means that Hornady will not be liable in any way, which would logically include a duty to defend, for any part of a claim that is asserted against GP alone. Since the *Wollerson* action only involved a claim asserted against GP for their negligence, the court concludes that Hornady did not owe GP a duty to defend and therefore does not owe them the attorneys' fees GP incurred.

Accordingly, GP's motion for summary judgment in this regard should be denied and Hornady's cross-motion for summary judgment on the issue of defense should be granted.

### 3. Breach of Contract - Failure to Procure Insurance

With regard to insurance, the Agreement requires Hornady to obtain and maintain automobile liability insurance and commercial liability insurance covering GP. Specifically, ¶ 8 of the Agreement provides in pertinent part: "[Hornady] agrees to obtain insurance covering **the risks incident to this Agreement** .... [Hornady] shall obtain such insurance and any additional insurance specified in Appendix A in the amounts specified in Appendix A." (emphasis added).

Appendix A to the Agreement states in pertinent part: "[Hornady] shall cause [Georgia-Pacific] to be named as an additional insured on its Commercial General Liability and Automobile Liability policies."

Valid as of March 27, 2003, GP received a Certificate of Insurance indicating that it was an additional insured on Hornady's automobile liability insurance policy with Liberty Mutual.

Hornady argues that it fulfilled its contractual duty to procure insurance by having GP named as an additional insured in the Certificate of Insurance and that pursuant to Section II(A)(1)(e) of the policy, GP would be insured if it were "liable for the conduct of an insured described above [Hornady] but only to the extent of that liability." Since GP was found liable for its own conduct, Hornady argues, the policy did not cover GP. Hornady contends that this was the only type of coverage that was contemplated between the parties.

GP argues that it does not base its breach of contract - failure to procure insurance claim on Section II(A)(1)(e), which they correctly contend could apply to anyone facing vicarious liability for Hornady's actions. Rather, GP maintains that Hornady's contractual duty to procure insurance that covered "risks incident to this Agreement" specifically required Hornady to get GP named as an "additional insured" on its automobile policy per ¶ 8 and Appendix A to the agreement. In other

7

words, it appears that GP is arguing that an "additional insured" is equivalent to a "named insured."

However, there is nothing in either the Agreement, Certificate of Insurance, or the policy that defines an "additional insured," nor is there any language indicating that an "additional insured" is the same as a "named insured."

Section II(A)(1)(e) of the policy defines "Who Is An Insured" as: "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." Section VI of the policy defines an "insured" in pertinent part as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage."

Furthermore, Item One of the Motor Carrier Declarations lists only Hornady as a "named insured" and the Named Insured Endorsement names B.C. Hornady, B.C. Hornady & Associates, and Hornady 84 Home Center, Inc. as additional named insureds. There is no endorsement naming GP as a "named insured."

Thus, the only language in the subject policy itself that could apply to Georgia Pacific is contained in Section II(A)(1)(e) which concerns vicarious liability.

The primary question at hand is whether Hornady fulfilled its contractual obligations to procure insurance for GP pursuant to their Contract Carriage Agreement. The court concludes GP has demonstrated no genuine issue of material fact warranting a finding other than that Hornady did fulfill this duty.

Section 8 and Appendix A of the Agreement required Hornady to obtain insurance covering the "risks incident to this Agreement." The term "risks incident to this Agreement," when read just after ¶ 7 is clearly defined by ¶ 7 since that paragraph begins by stating that "[Hornady] agrees to assume all risks growing out of or occurring in the performance of this Agreement by [Hornady] its

8

agents or employees for ...." Subsection (b) to ¶ 7 states that Hornady agreed to assume all risks for "any ... injury to any person ... however caused during the performance of this Agreement or upon the premises where this Agreement is being performed, **except when caused by the negligence of G-P, its agents and employees**." Subsection (c) goes on to state that Hornady agreed to assume all risks "to defend, save harmless and indemnify [Georgia Pacific] from and against any and all manner of ... claims ... arising out of or predicated upon the operation of trucks of or by [Hornady] ... **provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by an act or omission of G-P**."

Thus, after reading ¶ 7, ¶ 8, and Appendix A together, the term "risks incident to this Agreement," does not include instances where GP is alleged to have been solely liable for an injury. Accordingly, after consulting Subsection (4) of Ga. Code Ann. § 13-2-2, which provides that "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part," the court concludes that Hornady did not have a contractual duty to procure and maintain insurance covering GP for claims alleged solely against them. Stated affirmatively, Hornady did procure insurance for the risks incident to the Agreement (which exclude claims made solely against GP) between it and GP by having a policy which covered "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

The court therefore concludes that GP's motion for summary judgment as to their breach of contract claim for failure to procure insurance should be denied and Hornady's cross-motion for summary judgment regarding same should be granted. Thus, all of GP's claims against Hornady should be dismissed with prejudice.

9

**C. GP's Claims Against Liberty Mutual**

GP argues in its motion for summary judgment against Liberty Mutual that if Hornady is held liable for failure to defend and failure to procure insurance, then GP's claims against Liberty Mutual would be rendered moot. However, GP maintains that if the court grants summary judgment in favor of Hornady, GP's motion against Liberty Mutual should be granted.

In their Second Amended Complaint, GP asserts three claims against Liberty Mutual: (1) failure to defend and indemnify; (2) negligent failure to name GP as an additional insured; and (3) breach of contract – third-party beneficiary.

<u>1. Failure to Defend and Indemnify</u>

Since it has already concluded that Hornady did not owe GP a duty to defend in the *Wollerson* action, the court likewise concludes that Liberty Mutual, Hornady's insurer, does not owe GP a duty to defend. For the same reasons, Liberty Mutual does not owe a duty to indemnify GP. This is because there is nothing in the language of the Agreement between Hornady and GP, Hornady's policy with Liberty Mutual, and the Certificate of Insurance issued to GP designating GP as a named insured. Nor is there any language indicating that GP, as an "additional insured" is entitled to defense or indemnity for claims made solely against GP.

The Certificate of Insurance stated that "Cert holder [GP] is hereby named Additional Insured as per written contract." The written contract referred to is the Contract Carriage Agreement between GP and Hornady, which, as the court has already concluded, required that Hornady obtain insurance covering the risks incident to their Agreement which did not include claims made solely against GP. The Certificate of Insurance, by its express terms, was "issued as a matter of information only and confers no rights upon the certificate holder other than those provided in the policy." Under the

"Coverages" section, the Certificate also states: "The insurance afforded by the policies described herein is subject to all the terms, conditions and exclusions of [the policies of the named insured, Hornady]."

When consulting the policy, the only provision that would allow defense or indemnification of GP is Section II(A)(1)(e), which defines an insured as: "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability." Since GP was not sued for the conduct of Hornady, the "insured," then the policy does not cover GP in any way.

It is undisputed that there was never an agreement between Liberty Mutual and GP. Therefore, the only contractual language GP could rely on to seek defense and/or indemnification from Liberty Mutual is the policy itself and not the Agreement between GP and Hornady, nor the Certificate of Insurance. Even if the Certificate of Insurance were considered as a contractual document, the plain language of the Certificate limits GP's coverage to the policy and the policy only covers GP is if it held liable for the conduct of Hornady.

Accordingly, the court concludes that GP has failed to create a genuine issue of material fact warranting summary judgment against Liberty Mutual for the failure to defend and/or indemnify claim. Thus, GP's motion for summary judgment against Liberty Mutual in this regard should be denied and Liberty Mutual's cross-motion for summary judgment should be granted.

2. Negligence claim

In their Second Amended Complaint, GP argues that on information and belief, Hornady took steps to have Liberty Mutual name GP as an additional insured on Hornady's policy and that if Liberty Mutual failed to do so, it was negligent resulting in damage to GP.

It is undisputed that GP was issued a Certificate of Insurance from Liberty Mutual through

Marsh USA, Inc. which named GP an "additional insured." However, the Certificate essentially had no meaning other than what was already in the policy per the terms of the Certificate. The policy itself did not specifically name GP as an "additional insured" nor a "named insured." Rather, GP was insured via Section II(A)(1)(e) of the policy. In theory, GP would have been covered by that section without a Certificate of Insurance. It is also noteworthy that the policy – which is the sole source from which GP could base a theory of a duty to defend and indemnify against Liberty Mutual – does not define the term "additional insured," and therefore there is nothing in the policy stating or implying that being an "additional insured" is equivalent to being a "named insured." Furthermore, GP has cited no authority equating the two.

In any event, the cause of action alleged in this instance is that Liberty Mutual negligently failed to name GP as an additional insured. GP has cited no contractual relationship with Liberty Mutual nor any authorities imposing a duty upon Liberty Mutual, another party's insurer, to name GP as an additional insured. Rather, it was Hornady's contractual duty to cause GP to be named as an additional insured pursuant to ¶ 8 and Appendix A to the Contract Carriage Agreement.

It is important to note that the Agreement between Hornady and GP never indicated that "additional insured" status meant anything other than GP being insured only if they were facing liability in whole or in part for Hornady's actions. Indeed, the Certificate of Insurance itself stated that GP, as the certificate holder, was named an additional insured "as per written contract." This means that GP's "additional insured" status was limited by the Agreement, which in turn limited GP's insurance coverage to vicarious liability for Hornady.

The court concludes that GP has not demonstrated a genuine issue of material fact justifying summary judgment in their favor on their negligence claim against Liberty Mutual. First, it is

undisputed that GP was an "additional insured" according to the Certificate of Insurance which was defined by the policy which, in turn, provided in Section II(A)(1)(e) that anyone would be covered if held vicariously liable for Hornady's actions. Second, GP has shown no duty on Liberty Mutual's part to name GP as anything other than an "additional insured." In other words, GP has not established that Liberty Mutual had a duty to name GP as a "named insured" or to modify the policy specifically to enlarge GP's right to be defended and indemnified for claims against them not involving vicariously liability for Hornady's actions.

Accordingly, GP's motion for summary judgment against Liberty Mutual on their negligence claim should be denied, while Liberty Mutual's cross-motion regarding same should be granted.

3. Breach of Contract - Third Party Beneficiary

GP's third-party beneficiary claim fails as a matter of law because GP has not shown that there is a genuine issue of material fact demonstrating that Liberty Mutual unlawfully prevented GP from "benefitting" from the policy between Liberty Mutual and Hornady. As explained above, since coverage for Wollerson's claim against GP did not trigger coverage under the policy, and since Liberty Mutual did not fail to name GP as an "additional insured" as limited by the Agreement between Hornady and GP, GP cannot claim defense and/or indemnity for the Wollerson claim as a third-party beneficiary to the insurance policy. Therefore, GP was not entitled to "benefit" from the policy by being defended and indemnified for the Wollerson claim.

Thus, GP's motion for summary judgment on this claim should be denied, while Liberty Mutual's cross-motion in this regard should be granted.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Georgia Pacific's motions for summary judgment against Hornady and Liberty Mutual should be denied and Hornady and Liberty

Mutual's cross-motions for summary judgment should be granted. Thus, all of Georgia Pacific's claims should be dismissed with prejudice. Accordingly, a final judgment shall issue forthwith, **THIS DAY** of February 26, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE